# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01303-COA

JUSTIN BOOKER                                                        APPELLANT

v.

STATE OF MISSISSIPPI                                                  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/12/2017 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/04/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND FAIR, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     A Coahoma County grand jury returned a two-count indictment charging Justin Booker with one count of conspiracy to commit the crime of robbery and one count of capital murder stemming from the death of Davis Goon.  After a trial held in September 2017, the trial court declared a mistrial as to the capital murder charge because the jury could not reach a unanimous verdict, but the jury did find Booker guilty of conspiracy to commit robbery. The trial court sentenced Booker to serve five years in the custody of the Mississippi Department of Corrections (MDOC).

¶2.     Booker now appeals his conviction and sentence.  Booker's counsel has filed a brief

pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005). His counsel states he has searched the record but was unable to find any arguable issues for appellate review. Booker was provided the opportunity to file a pro se brief, but he failed to do so. Finding no error, we affirm the trial court's judgment.

**FACTS**

¶3. On the night of December 26, 2013, Davis was shot and killed during a robbery in the grocery store he owned, Goon's Grocery.[1] The grand jury jointly charged Booker, Cedric Collins, and DeSean Shields with one count of conspiracy to commit the crime of robbery and one count of capital murder in relation to Davis's death. Booker filed a pretrial motion for severance of his trial from that of his codefendants, and the trial court granted the motion.

¶4. At Booker's trial, which was held in September 2017,[2] the jury heard testimony from Luther Lampkin, who testified that at about 6:45 p.m. on December 26, 2013, he was grilling food outside of his restaurant when he heard a door slam at Goon's Grocery. Luther explained that the grocery store was located nearby and within eyesight. Luther saw an individual wearing a hat come out of the grocery store and run east toward the railroad tracks. Luther heard a second slam and saw two more individuals exit the grocery store, followed

---

[1] Davis and his father, Charles Goon, owned and operated three businesses in Clarksdale, Mississippi: Goon's Grocery, Goon's Package Store, and Goon's Furniture.

[2] Prior to his trial, Booker filed a motion for a psychiatric examination to determine his competency to stand trial and his mental condition at the time of the offense, which the trial court granted. The trial court conducted a competency hearing and heard testimony from Dr. Criss Lott, who performed Booker's examination. Dr. Lott concluded that Booker was competent to stand trial and that he was not suffering from a severe mental disorder at the time of the offense. The trial court ruled that Booker was competent to stand trial.

by Davis. Luther testified that he could not tell what kind of clothing any of the men were wearing. Luther stated that right after the two individuals exited the store, he heard gunshots and he saw Davis fall. Luther testified that when he heard the gun shots, he observed that the second of the two individuals had his arm "extended back toward [Davis]." Luther stated that like the first person who ran out of the store, the other two individuals also ran east toward the railroad tracks and around the corner.

¶5. Luther told the jury that he ran over to Davis, who was lying on his back, unresponsive. Davis's sister and father came outside from the package store next door, and Luther told them to call 911. Luther testified that he saw a gun laying on the ground beside Davis.

¶6. Davis's sister, Debbie Goon, testified that on the evening of December 26, 2013, she and her father were in Goon's Package Store, which was located next to the grocery store. Debbie testified that she and her father heard gunshots, and they went outside to check on Davis. Debbie testified that as she prepared to walk out of the package store, she saw someone wearing a "grayish white hood[ie]" walk past the store. Once outside, Debbie saw Luther kneeling down by Davis, who was lying unresponsive on the sidewalk outside of the front door of the grocery store. Debbie saw a gun on the ground next to Davis, and she testified that her father picked up the gun and placed it on the counter of the grocery store. Debbie identified the gun found on the ground next to Davis as Davis's gun. According to Debbie, Luther instructed her to call 911. Debbie entered the grocery store and called 911, and she noticed at that time that the cash register was missing from the counter. Debbie

testified that she later saw the cash register outside on the ground by the railroad, around the intersection of West Tallahatchie Street and Martin Luther King Boulevard.

¶7. Investigator Charles Sledge of the Clarksdale Police Department responded to the 911 call on December 26, 2013. When Investigator Sledge arrived at the grocery store, he saw Officer Rip Woodard performing CPR on Davis outside of the grocery store. Investigator Sledge walked east down the sidewalk and found a black hat with a Mountain Dew logo, which he collected as evidence and later submitted to the crime lab for DNA testing. On the east corner of the grocery store near the railroad tracks, Investigator Sledge also discovered a cash register that was "busted up" but still containing money, as well as a broken piece of the register. Investigator Sledge testified that the cash register and the broken piece from the register were dusted for fingerprints. Investigator Sledge also photographed and searched Davis's truck, which was parked in front of the grocery. He testified that there were bullet holes in the windshield and front passenger window of the truck.

¶8. Sergeant Norman Starks arrived on the scene after Investigator Sledge. Sergeant Starks testified that he and Officer Kendrick Walker photographed the crime scene and collected evidence. Sergeant Starks testified that he discovered and collected two projectile fragments from inside the truck, one on the dashboard area and another in the middle of the front seat, which were sent to the crime lab for testing. After processing the scene, Sergeant Starks returned to the police department. Sergeant Starks stated that Booker was already at the police station, and he learned that Booker was a person of interest in the shooting. Sergeant Starks testified that he performed a gunshot-residue test on Booker's hands at 11:05

4

p.m. Sergeant Starks stated that he did not personally perform a gunshot-residue test on any other suspects.

¶9.    The officers testified that on the counter inside the grocery store, they discovered and collected a five-shot .38 caliber revolver that contained three spent shell casings and two live rounds. Investigator Sledge testified that the revolver belonged to Davis. Sergeant Starks also found one spent projectile on the floor inside the store near a potato chip rack in front of the counter. Sergeant Starks testified that he and another officer dusted the entire counter and the inner and outer parts of the front door in an attempt to lift fingerprints, but no prints were recovered.

¶10.    Sheriff Charles Jones testified that at the time of the shooting, he was off duty working on a car in a garage he owned, which was located about a block from Goon's Grocery. Sheriff Jones testified that on the night in question, he heard a few gunshots. Sheriff Jones stepped outside of the garage and saw a couple of individuals running behind the grocery store. Sheriff Jones then got in his personal vehicle and tried to follow the individuals, and he saw two men run inside a house on Sixth Street and Ashton Avenue. Sheriff Jones called the sheriff's office and the police department to tell them what he observed. He then drove his car down Baird Street and saw another man walking between some houses. Sheriff Jones testified that the man ended up on the corner of Baird Street and Seventh Street. Sheriff Jones testified that he was only fifteen or twenty feet away from this man, and he later identified the man as Collins in a photo lineup presented to him by Officer Walker.

¶11. Officer Walker testified that once he was at the police station, he took DNA swab samples from Booker, Collins, and Shields after obtaining signed consent forms. He packaged and secured the samples for testing at the crime lab.

¶12. Officer Walker testified that he took two recorded statements from Booker.[3] He took Booker's first statement the day after the shooting. In his first statement, Booker denied going to Goon's Grocery on the evening in question. Booker stated that he was at his home from 4:00 p.m. through the time of the incident. Booker denied any knowledge of the robbery and murder, but he admitted that he heard gunshots. Booker told Officer Walker that he saw Collins walking down the street on the day in question, and he said that Collins was wearing a black and green hat.

¶13. Officer Walker took Booker's second statement on December 30, 2013.[4] Officer Walker testified that in Booker's second recorded statement, Booker stated that until around 1:00 or 2:00 p.m. on December 26, 2013, he was with Sammy Sharrod. Booker stated that after Sammy went home, Booker went to Beverly Scott's house, where he met up with several people, including Collins and Shields. According to Booker, at about 4:00 p.m., Collins told Booker that he "had a lick that he wanted to hit." Officer Walker explained that a lick is "something monetary." Collins asked Booker if he wanted to participate, and Booker responded, "Nah, I'm good." Booker again denied being present in the grocery store.

¶14. Officer Walker advised Booker to tell him the truth, and Booker eventually admitted

---

[3] Officer Walker testified that he obtained *Miranda*-waiver forms signed by Booker and his father prior to taking each statement. *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] The State played both of Booker's recorded statements for the jury.

that he, Shields, and Collins went to the grocery store. Booker told Officer Walker that he did not enter the grocery store; instead, he stood on the corner while Collins, who was carrying a gun, went in. Booker stated to Officer Walker that Collins exited the store with the cash register and then Davis followed him with a gun. Booker said that he heard two gunshots, followed by another round of shots, and everybody started running. Booker told Officer Walker that he and Shields ran to a church around the corner behind the store, and they walked to their respective houses. Booker told Officer Walker that Collins was the one who shot Davis.

¶15. The jury also heard testimony from the State's expert witnesses. Mark LeVaughn, the State's expert witness in forensic/anatomic pathology testified that Davis's cause of death was a gunshot wound to the chest, and the manner of death was homicide. Chad Suggs, the State's expert witness in trace evidence testified that he examined Booker's gunshot residue kit and found one particle indicative of gunshot residue on the sample taken from the back of Booker's left hand. Felicia McIntire, the State's expert witness in tool marking and firearms examination testified that the projectile recovered from the floor in Goon's Grocery was not fired from Davis's revolver. McIntire also testified that she was unable to determine whether the two bullet fragments recovered from the truck were part of projectiles fired from Davis's revolver.

¶16. Steven Little of the Mississippi Crime Laboratory testified as an expert in the field of forensic serology. Little preserved the known DNA samples of Booker, Shields and Collins; he also obtained and preserved a DNA sample from the black Mountain Dew hat that police

recovered outside of the grocery store. The State then called Joseph Heflin of the Mississippi Crime Laboratory, who testified as an expert in the field of forensic biology, specializing in DNA analysis. Heflin testified that he compared the DNA sample from the Mountain Dew hat with the known DNA samples from Booker, Collins, and Shields. Heflin testified that "DNA from a couple of individuals" was present on the hat, and the dominant DNA profile he obtained from the hat was a partial DNA profile that "was consistent with the reference sample of Justin Booker." Heflin explained that he could not exclude Booker as the contributor of the dominant DNA profile on the hat, but he could exclude Shields and Collins as the contributor.

¶17. After the trial, the jury was unable to reach a unanimous verdict on the capital murder charge, and the trial court declared a mistrial as to that count. However, the jury returned a verdict finding Booker guilty of conspiracy to commit robbery. The trial court sentenced him to serve five years in the custody of the MDOC. Booker now appeals.

## DISCUSSION

¶18. Booker's appointed appellate counsel filed a *Lindsey* brief, certifying that he has scoured the record and that the case presents no "arguable issues" for appeal. *Lindsey*, 939 So. 2d at 748 (¶18). Appellate counsel complied with *Lindsey* by sending Booker a copy of the brief and advising him of his right to file a pro se brief. *See id.* This Court also entered an order giving Booker an opportunity to file a pro se brief, but Booker did not file one.

¶19. Pursuant to *Lindsey*, we have "conducted an independent and thorough review of the record, and we conclude that there are no issues that warrant reversal." *Taylor v. State*, 162

So. 3d 780, 787 (¶18) (Miss. 2015).  The State presented sufficient evidence to sustain

Booker's conviction.  We recognize that the jury's role is to assess the witnesses' credibility

and resolve conflicts in the evidence.  *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017).

Keeping the jury's role in mind, we find that no basis exists for us to disturb the jury's

verdict on appeal.  Therefore, Booker's conviction and sentence are affirmed.

¶20.    **AFFIRMED.**

    **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**