# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00285-COA

**CEDRIC COLLINS**                                                   **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

DATE OF JUDGMENT:              01/25/2019
TRIAL JUDGE:                  HON. CHARLES E. WEBSTER
COURT FROM WHICH APPEALED:    COAHOMA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       ARTHUR H. CALDERON
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: LAURA HOGAN TEDDER
DISTRICT ATTORNEY:            BRENDA FAY MITCHELL
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 09/29/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1. Following a jury trial, Cedric Collins was convicted of conspiracy to commit robbery and capital murder. On appeal, Collins argues that a photographic lineup shown to a witness was impermissibly suggestive; that the witness's in-court and out-of-court identifications were unreliable; and that the State presented insufficient evidence to support his convictions. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On December 26, 2013, DeSean Shields, Justin Booker, and Cedric Collins were smoking marijuana at a friend's home in Clarksdale. Booker said he was going to "hit a lick"

(i.e., commit some sort of crime to get some money) later that night, and Collins noticed that Booker was carrying a 9mm or .40-caliber handgun. The three men later went to CW's Club on West Tallahatchie Street. Outside the club, Booker again said he was going to "hit a lick" and suggested robbing Goon's Grocery Store, which was located nearby on Martin Luther King Boulevard.

¶3.    At about 6 p.m., Debbie Goon and her father, Charles Goon, were in the process of closing their family-owned liquor store on Martin Luther King Boulevard. The family's liquor store, grocery store, and furniture store were in consecutive storefronts on the south side of Martin Luther King Boulevard near West Tallahatchie Street. Debbie's brother, Davis, was working at the grocery store. As Debbie was walking toward the front of the liquor store, she heard gunshots nearby and quickly locked the store's front door. Debbie then saw a man about 5'8" or 5'9" wearing a grayish-white hoodie walk quickly past the liquor store with his hands in his pockets. The man came from the direction of the grocery store and continued west. Debbie then ran to the grocery store and found Davis lying on the ground outside with a gunshot wound to his chest. Luther Lampkin, who owned Two Brothers Wangz & Thangz, a restaurant across the street, was trying to help Davis. Davis's gun was lying next to him on the ground.

¶4.    Lampkin was outside his restaurant grilling when he heard the front door to Goon's Grocery Store slam, and a man ran out of the store carrying something. It appeared that the man was having some difficulty running. Next, two additional men ran out of the store, and Davis followed the three men out to the street and said something to them. One of the men

2

reached back behind him, and then Lampkin heard gunshots. Davis fell to the ground, and Lampkin saw that Davis had been shot. The three men all fled. Lampkin tried to help Davis and told Debbie to call 911. Davis later died of a gunshot wound to the chest.

¶5. Investigators from the Clarksdale Police Department arrived shortly thereafter. They found a black and green Mountain Dew baseball cap on the sidewalk in front of the furniture store. DNA from the hat was sent to the Mississippi Forensics Laboratory. Collins and Shields were excluded as possible contributors to the sample. However, the dominant DNA profile from the sample was consistent with Booker's DNA.

¶6. The cash register had been removed from the grocery store and was found a few feet from the Mountain Dew hat near the corner of Martin Luther King Boulevard and West Tallahatchie Street. No latent fingerprints of value could be recovered from the cash register. On the front counter of the store, investigators found a .38-caliber revolver. They found a 9mm projectile near the front counter and a bullet strike in a wall. In addition, the passenger side glass of Davis Goon's truck, which was parked in front of the grocery store, was shattered by a bullet hole, and the officers found bullet fragments inside the vehicle.

¶7. At the time of the shooting, Coahoma County Sheriff Charles Jones was off duty and working nearby in his automobile garage/shop. Jones's garage was approximately one hundred yards south of Goon's Grocery on the corner of West Tallahatchie Street and Fifth Street. A door on the north side of Jones's building faced the rear of the Goons' businesses, and two double garage doors on the east side of the building opened onto West Tallahatchie Street. When Jones heard gunshots, he opened the door on the north side of his building and

3

saw two men running southwest away from the back of the Goon's Grocery Store.

¶8.     Jones then got into his car to look for the two men.  On the corner of Paul Edwards Avenue and Seventh Street, Jones saw one of the men.  Jones contacted the Coahoma County Sheriff's Department and learned that there had been a shooting in the area.  He then called Detective Kendrick Walker with the Clarksdale Police Department to tell him what he had seen.  After Jones turned the corner, he saw two other men run inside a residence near the corner of Ashton Avenue and Sixth Street.  Jones believed that one of those two men was the second man that he had seen running from the back of Goon's Grocery Store.

¶9.     Jones was shown a six-person photographic lineup, and he identified Collins as the man he had seen at the corner of Paul Edwards Avenue and Seventh Street and one of the two men he had seen running from Goon's Grocery Store.  Jones identified Collins again at trial.

¶10.    On January 4, 2014, Collins turned himself in to the police and gave a recorded statement to Investigator Walker.  Collins told police that he had been sleeping in abandoned houses or cars since the murder.  He denied participating in the robbery and murder.  Rather, he claimed that he was still at CW's Club when Booker and Fields walked across the street to Goon's Grocery Store.  According to Collins, he tried to discourage the robbery.  Collins claimed that as he walked toward the grocery store, Booker "met him at the door" carrying the cash register.  Collins stated that Davis Goon "must have got up" and came out of the store after Booker and Fields.  According to Collins, Booker shot Davis when Davis came out of the door.  Booker, Shields, and Collins then fled.

4

¶11. Collins, Booker, and Shields were indicted for conspiracy to commit robbery and capital murder. Collins was tried separately.[1] Prior to trial, Collins filed a motion to suppress evidence of Sheriff Jones's out-of-court identification. The trial judge denied the motion. The jury found Collins guilty of conspiracy to commit robbery and capital murder, and the judge sentenced Collins to concurrent terms of five years and life in the custody of the Department of Corrections. Collins filed a motion for judgment notwithstanding the verdict or a new trial, which the trial judge denied, and a notice of appeal.

**ANALYSIS**

## I. Identification Evidence

¶12. Collins's first argument on appeal is that the six-person photographic lineup shown to Sheriff Jones was impermissibly suggestive. We will not reverse a trial judge's denial of a motion to suppress identification evidence "unless there is an absence of substantial credible evidence supporting it." *Butler v. State*, 102 So. 3d 260, 264 (¶8) (Miss. 2012) (quotation marks omitted). "For an identification (made out of court or in court) to be excluded, it must be the result of an impermissibly suggestive lineup *and* the identification must be unreliable." *Id.* In practice, a defendant challenging the validity of a pretrial

---

[1] Booker was also tried separately. In a statement to police that was not admitted at Collins's trial, Booker claimed that he waited outside while Collins and Shields went into the store, that it was Collins's idea to rob the store, and that Collins shot Davis Goon. *Booker v. State*, 259 So. 3d 1274, 1277 (¶13) (Miss. 2018). The jury in Booker's first trial found him guilty of conspiracy to commit robbery but could not reach a unanimous verdict on the charge of capital murder. *Id.* at 1277-78 (¶17). This Court affirmed Booker's conviction for conspiracy. *Id.* at 1278 (¶19). Booker was tried again and convicted of capital murder. That conviction is on appeal. *Booker v. State*, No. 2018-KA-00696-COA (Miss. Ct. App.).

5

identification procedure bears a "heavy burden" of proof. *Thompson v. State*, 483 So. 2d 690, 692 (Miss. 1986).

¶13.   "A lineup or series of photographs is impermissibly suggestive if the accused, when compared with the others, is conspicuously singled out in some manner from the others, either from appearance or statements by an officer." *Butler*, 102 So. 3d at 264 (¶9) (quotation marks and brackets omitted). "To be excluded, an out-of-court identification must have resulted from an identification procedure that was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Id.* at 265 (¶10) (quotation marks omitted).

¶14.   Collins argues that the photographic lineup in this case was impermissibly suggestive because Sheriff Jones knew Collins and identified him to Investigator Walker before Walker prepared the photographic lineup.  In other words, Collins argues that the outcome of the identification procedure was predetermined because Jones knew Collins and knew to look for his photo in the lineup.  However, the evidence on this point was in conflict.  During the suppression hearing, Sheriff Jones testified unequivocally that he did not know Collins and that he did not learn Collins's name until after he identified him in the lineup.  In contrast, Walker's testimony was inconsistent.  Walker initially testified that Sheriff Jones identified the suspect as "Collins" when they first spoke, before Walker prepared the lineup.  But Walker later testified:

> A.   . . . [Jones] gave me . . . well, a description, and I think he gave me the name.  I'm not sure if he gave me the name or not.

> Q.   Well, that is the question that is important.  Are you certain that he told

6

you Collins or not?

> A.    I'm not sure.

Walker also testified:

> Q.    Now the question the Judge asked you is, what led you to including Cedric Collins of all persons into this photo lineup?
>
> A.    Information we received from different informants.
>
> Q.    So this picture was included for the Sheriff to identify. Was it based off of what the Sheriff told you or what informants gave you?
>
> A.    Informants.

But, finally, Walker's testimony changed again. He testified, "The Sheriff gave me the name. I'm sure he did."

¶15.    After listening to Jones and Walker, the judge stated:

> I have to say, on this particular fact, Mr. Walker was somewhat tentative in his testimony. Sheriff Jones, on the other hand, seemed to be very positive. At this point, it's really more of a credibility issue. . . . I tend to believe the Sheriff on that. For that reason I'm gonna allow the . . . lineup.

¶16.    "During a suppression hearing, the trial judge sits as a fact finder." *Randolph v. State*, 852 So. 2d 547, 556 (¶22) (Miss. 2002). In that role, "[t]he trial judge has sole authority in determining witness credibility. Such a determination should not be overturned without a substantial showing that the trial judge was manifestly wrong." *Moore v. State*, 933 So. 2d 910, 918 (¶24) (Miss. 2006) (quoting *Jones v. State ex rel. Miss. Dep't of Pub. Safety*, 607 So. 2d 23, 28 (Miss. 1991)). Here, the trial judge found that Sheriff Jones's testimony on this particular point—whether he knew Collins or his name prior to identifying Collins in the lineup—was credible. As the judge noted, Jones's testimony was positive and unequivocal

7

on this point, whereas Walker wavered repeatedly. In addition, Walker testified that the police received information from other sources about possible suspects. Thus, given the passage of time between the murder and the trial, Walker could have been mistaken as to the source of Collins's name. The judge's finding on this factual issue must be affirmed because it is not "manifestly wrong." *Id.*

¶17. In addition, Collins does not argue on appeal that the identification procedure was impermissibly suggestive for any other reason. No "preliminary judicial inquiry into the reliability of an eyewitness identification" is required when, as in this case, "the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry v. New Hampshire*, 565 U.S. 228, 248 (2002). Accordingly, this issue is without merit.[2]

## II. Sufficiency and Weight of the Evidence

¶18. Collins also argues that the State presented insufficient evidence to support his conviction or, in the alternative, that he is entitled to a new trial because the verdict is against the overwhelming weight of the evidence. Specifically, Collins argues that there is insufficient evidence that he agreed or conspired to rob Goon's Grocery Store.

¶19. "When this Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279

---

[2] We also note that Collins admitted that he fled the grocery store and that he fled to the area where Sheriff Jones saw him a short time later. Thus, Sheriff Jones's testimony did not add materially to Collins's own statement to police.

(¶25) (Miss. 2017). The issue is not "whether we think the State proved the elements. Rather, we must decide whether a reasonable juror could rationally say that the State did." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010).

¶20. When we review the denial of a motion for a new trial, we "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017). "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id.* We only review the trial judge's decision to deny a new trial for an abuse of discretion. *Id.* at 292 (¶21).

¶21. In order to prove conspiracy, the State was required to prove that Collins agreed with Booker and Shields to rob the grocery store. *Berry v. State*, 996 So. 2d 782, 787 (¶12) (Miss. 2008). "The prosecution was not required to show that the parties entered an express or formal agreement. A conspiracy can be proven by the acts and conduct of the alleged conspirators and can be inferred from the circumstances. . . . [O]nce the existence of a conspiracy is shown, only slight evidence is required to connect a particular defendant with the conspiracy." *Id.* at (¶13) (quoting *Morgan v. State*, 741 So. 2d 246, 256 (¶27) (Miss. 1999)) (citations omitted).

¶22. In addition, under Mississippi law, "capital murder" includes "[t]he killing of a human being without the authority of law by any means or in any manner . . . [w]hen done with or without any design to effect death, by any person engaged in the commission of . . . robbery."

9

Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2014). "Unlike other sections of the capital murder statute, Subsection 2(e) does not require the prosecution to prove the elements of murder, only that a killing took place while the accused was 'engaged in the commission' of the enumerated felonies." *Ronk v. State*, 172 So. 3d 1112, 1126 (¶23) (Miss. 2015) (quoting *Layne v. State*, 542 So. 2d 237, 243 (Miss. 1989)). Thus, "[t]o find [Collins] guilty of capital murder, the jury did not need to find he was the shooter." *Dampier v. State*, 973 So. 2d 221, 231 (¶28) (Miss. 2008); *see also Randall v. State*, 716 So. 2d 584, 590 (¶32) (Miss. 1998) (stating that when multiple defendants are charged with capital murder for a killing during a robbery, "it is largely irrelevant who did the shooting").

¶23. The evidence was sufficient to support Collins's convictions, and the verdict is not against the overwhelming weight of the evidence. Collins knew that Booker had a gun, and Booker told him that he intended to rob Goon's Grocery Store. Collins claims that he did not enter the grocery store with Booker and Shields. He claims that it was only a coincidence that he ran into Booker just as Booker was running out with the cash register. However, Collins's statement was contradicted by Lampkin, who testified that all three men came running out of Goon's Grocery Store. All three men then fled the scene, and Collins hid in abandoned houses or cars for several days before he finally turned himself in to the police. From this evidence, a rational juror could find that Collins conspired with Booker and Shields to rob Goon's Grocery Store. Moreover, because Davis Goon was killed during the commission of that robbery, a rational juror could also find Collins guilty of capital murder. Therefore, the evidence was sufficient to support Collins's convictions. In addition, the

10

evidence supporting the verdict was not overwhelmed by any other evidence. Therefore, the trial judge did not abuse his discretion by denying Collins's motion for a new trial.

## CONCLUSION

¶24.    The trial judge did not err or abuse his discretion by admitting evidence that Sheriff Jones identified Collins from a photographic lineup or by allowing Jones to identify Collins again at trial. The State presented sufficient evidence to support Collins's convictions, and the trial judge did not abuse his discretion by denying Collins's motion for a new trial.

¶25.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**