**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2018-KA-00696-COA**

**JUSTIN BOOKER**                                               **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/15/2019 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MATTHEW W. WALTON ASHLEY LAUREN SULSER |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/13/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. After a three-day trial, a Coahoma County Circuit Court jury convicted Justin Booker

of capital murder involving a robbery.[1] Because Booker was only fifteen years old at the

---

[1] This trial was Booker's second trial for the charge of capital murder. Booker was initially tried in September 2017. That jury found him guilty of conspiracy to commit robbery; however, the trial court declared a mistrial on the capital murder charge because the jury could not reach a unanimous verdict. The trial court sentenced him to serve five years in the custody of the Mississippi Department of Corrections (MDOC). This Court affirmed his conviction and sentence in *Booker v. State*, 259 So. 3d 1274 (Miss. Ct. App. 2018).

time of the crime, the trial court subsequently held a *Miller*[2] hearing to determine parole eligibility. The trial court sentenced Booker to life imprisonment in the custody of the MDOC with eligibility for parole. Booker now appeals, challenging the sufficiency and weight of the evidence. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. On the evening of December 26, 2013, Davis Goon was shot and killed during a robbery outside his small grocery store in Clarksdale, Mississippi. A grand jury returned a two-count indictment, charging Booker, Cedric Collins, and DeSean Shields with one count of conspiracy to commit robbery and one count of capital murder involving Davis's death.[3] At the time of the crimes, Booker was fifteen years old, Collins was twenty-two, and Shields was seventeen.

¶3. Goon and his father, Charles, owned and operated three stores located next to each other on Martin Luther King Street—Goon's Grocery Store, Goon's Package Store, and Goon's Furniture Store. Around 6:00 p.m. on the evening of the crimes, Davis was working at the grocery store, and Charles was next door working in the liquor store. Debbie Goon, Davis's sister and Charles's daughter, was home for the holidays and working with her father at the liquor store.

¶4. Across the street from the Goon's businesses, Luther Lampkin was outside grilling

---

[2] *Miller v. Alabama*, 567 U.S. 460 (2012).

[3] The trial court granted the defendants' motion to sever their trials. Collins was convicted on both counts and sentenced to life imprisonment. Fields pleaded guilty to conspiracy and the lesser crime of armed robbery and was sentenced to serve five years and twenty-five years, respectively.

food for his restaurant around 6:45 p.m. He heard the door slam to Goon's Grocery Store, which was unusual. Then he heard a loud noise and observed a person exiting the store. He heard the door slam a second time, along with profanity, and knew something was wrong. Soon after, he saw two more individuals exit the store, followed by Davis. Lampkin saw one of these individuals extending his arm back toward Davis. Lampkin heard a series of gunshots and saw Davis fall to the ground. These two individuals ran in the same direction as the first individual: east toward the railroad tracks. Lampkin testified that he believed the first person running out of the store was wearing a hat; he could not tell if the person was carrying anything. Lampkin could not see the faces of any of the individuals. Lampkin ran to Davis and found him lying on his back and unresponsive. Lampkin saw Davis's small revolver next to his body. He told Davis's father and sister to call 911 and proceeded to perform CPR on Davis until law enforcement arrived.

¶5. Debbie corroborated Lampkin's account of the crimes. While Debbie was speaking to her father at the liquor store, she heard a "popping noise." Concerned, she went to check on her brother at the grocery store next door and observed a person wearing a "grayish white hood[ie]" walk past the liquor store. Once outside, she saw Lampkin trying to help her brother, who was lying on the sidewalk, unresponsive. Davis's truck was parked in front of the grocery store. Debbie saw Charles pick up Davis's pistol next to his body and place it on the counter in the grocery store. She also noticed the grocery store's cash register was missing but later found the register in broken pieces on the ground by the railroad tracks at the end of the block around the intersection of West Tallahatchie Street and Martin Luther

3

King Boulevard.

¶6.    Sheriff Charles Jones was off duty at his garage-shop business located one block behind Goon's Grocery Store. He heard gunshots and saw two men running away from the grocery store. The gunshots sounded like an exchange from two different weapons. Jones tried to follow the two individuals in his personal vehicle. A third individual was also running from the area separately. The first two men ran into what was later determined to be Booker's home. Jones observed the third individual walking in the other direction behind some houses. He was holding a white hoodie wrapped up like he was trying to hide something in it. Later, Jones identified this individual as Cedric Collins from a photographic lineup.

¶7.    Officers Charles Sledge and Norman Starks of the Clarksdale Police Department also arrived at Goon's Grocery Store around 6:45 p.m. on the evening of December 26. They photographed the scene and collected evidence. Upon arrival, Detective Sledge found Davis "lying on the sidewalk." Searching the area for evidence, Detective Sledge found the cash register on the east side of the building toward the railroad tracks, and a black hat with a black and lime-green Mountain Dew logo was several feet from the register. He collected these items as evidence and later submitted them to the crime lab for DNA testing. Detective Sledge also took photographs of Davis's truck, which was parked in front of the grocery store. A projectile had struck the truck's windshield.

¶8.    Officer Starks investigated the interior of Goon's Grocery Store. On the store's counter was a five-shot, .38-caliber revolver with three empty shell casings in the chamber

4

and two unfired rounds. Officer Starks found a projectile on the floor by a potato-chip rack near the counter. He also collected several bullet fragments from Davis's truck, as well as a potato-chip bag and a cookie wrapper from the counter. The chip bag was tested for fingerprints.

¶9. While Officer Starks was still at the scene, Booker was identified as a suspect. Later that evening, Officer Starks conducted a gunshot residue kit on Booker's hands. Booker was left-handed. It was noted Booker lived just a few blocks away from Goon's Grocery Store.

¶10. At trial, the jury heard testimony from several expert witnesses for the State. Felicia McIntire, an expert in firearm and toolmark examinations, determined that the spent projectile found on the store's floor was not fired from Davis's .38-caliber revolver, but a nine millimeter firearm. She testified the two bullet fragments found in Davis's truck were too mutilated to determine whether they came from Davis's revolver. Jamie Richardson testified as an expert in latent fingerprint examination. She could not find any latent prints of value on the broken cash register, the chip bag, or the cookie wrapper.

¶11. Chad Suggs, an expert in trace evidence, examined the gunshot residue test kit performed on Booker and found one particle "indicative of gunshot residue" on the sample taken from the back of Booker's left hand. Suggs could not say that Booker discharged a firearm, handled something with gunshot residue, or was in close proximity to a discharged firearm. However, Suggs testified that there was a "drastic drop off" in the amount of gunshot residue on a person after about four hours. Gunshot residue was collected from

Booker around 11:00 p.m. on December 26, over four hours after the shooting.

¶12.    An expert in serology testified that he obtained DNA swabs from Booker, Collins, and Shields, as well as from inside the Mountain Dew hat found by the cash register in the street.  Joseph Heflin, a forensic biologist specializing in DNA analysis, generated DNA profiles from the swabs and the sample cutting from inside the hat.  He compared the DNA from the hat sample and the samples provided by Booker, Collins, and Shields.  Although there was DNA from a couple of individuals on the hat sample, Heflin testified that "the DNA results . . . contained a dominant profile consistent with the reference sample of Justin Booker."  Thus, Booker could not be excluded "as a possible DNA donor to this item," but the other two defendants "were excluded as possible contributors" because their DNA was not on the hat.  Heflin concluded that the statistical analysis indicated "the profile found in the hat is extremely rare"; therefore, he was confident the match was to Justin Booker.

¶13.    Forensic pathologist Dr. Mark LeVaughn performed Davis's autopsy.  He testified the cause of Davis's death was a gunshot wound to the upper middle chest, and the manner of death was homicide.

¶14.    Officer Kendrick Walker, an investigator with the Clarksdale Police Department, also responded to the scene.  He processed the scene, taking photographs and searching for evidence.  Officer Walker testified that the Mountain Dew hat was located a few feet from the cash register found down the street.  Later that evening, Officer Walker interviewed Booker, who claimed he had no personal knowledge of the incident—he never went to the grocery store and had been home since 4:00 p.m. that day.  Booker also stated he saw

Collins wearing a black and green hat that day. At trial, a recording of this interview was entered into evidence.[4]

¶15. Booker did not present any witnesses at trial. During closing argument, Booker's counsel conceded that Booker lied to police about the hat not belonging to him and that he did go to Goon's Grocery Store on the night of the crime. The jury was given instructions on capital murder, the underlying crime of robbery, circumstantial evidence, accomplice liability, and the defense of abandonment. The jury returned a verdict of guilty for capital murder.

## DISCUSSION

### I.      Sufficiency of the Evidence

¶16. Booker claims the State presented insufficient evidence to support the jury's verdict. He argues the State failed to prove beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that he robbed or shot Davis, or he aided or abetted Collins and Shields in the crimes. Further, he argues the State failed to prove that he did not voluntarily abandon any criminal acts before the shooting. Booker concludes this Court should reverse and render his conviction and sentence for capital murder.

¶17. In reviewing "the sufficiency of the evidence supporting a guilty verdict, [the appellate court] view[s] the evidence in the light most favorable to the State and decide[s] if rational jurors could have found the State proved each element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017) (citing *Poole v. State*, 46 So. 3d 290, 293

---

[4] Officer Walker took a second statement from Booker on December 30, 2013, which was not entered into evidence.

(¶20) (Miss. 2010)).  The reviewing court "must accept as true all credible evidence consistent with guilt" and give the State "the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Cowart v. State*, 178 So. 3d 651, 666 (¶41) (Miss. 2015) (quoting *Ginn v. State*, 860 So. 2d 675, 685 (¶31) (Miss. 2003)).  Reversal may occur when, "with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Id.*

¶18.   Booker was charged with capital murder involving a robbery.   The relevant Mississippi statute provides that "[t]he killing of a human being without the authority of law by any means or in any manner shall be capital murder . . . [w]hen done *with or without any design to effect death*, by any person engaged in the commission of . . . robbery."  Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2014) (emphasis added).  The Mississippi Supreme Court has stated that "[u]nlike other sections of the capital murder statute, [s]ubsection 2(e) does not require the prosecution to prove the elements of murder, only that the killing took place while the accused was 'engaged in the commission' of the enumerated felonies." *Layne v. State*, 542 So. 2d 237, 243 (Miss. 1989).  Finally, in a circumstantial evidence case, as here, "the State is required to prove the defendant's guilt not only beyond a reasonable doubt, but to the exclusion of every reasonable hypothesis consistent with innocence." *McRee v. State*, 732 So. 2d 246, 250 (¶14) (Miss. 1999).

¶19.   Booker points out that the State presented no eyewitness testimony identifying Booker as a participant in the crimes; only Collins was identified as one of the three men

8

running from Goon's Grocery Store by Sheriff Jones in the photographic lineup. Further, in Booker's first statement to Officer Walker, he denied that he went to the grocery store that day and denied all involvement in the incident. Booker notes that the State did not call either of Booker's co-defendants to corroborate the State's theory that Booker participated or aided and abetted in the offenses. Additionally, there was no direct evidence of what occurred inside the store, such as surveillance footage. There were no fingerprints of value found on the evidence, and Davis's revolver was the only weapon that police recovered.

¶20. Viewing the evidence in the light most favorable to the State, we find there was sufficient evidence to convict Booker of capital murder during the commission of a robbery. The primary evidence linking Booker to the scene was the hat found a few feet from the stolen cash register down the street and gunshot residue. Booker suggests it was reasonable to conclude that the hat found near the abandoned cash register could have belonged to someone else or that he could have lost it at another time. However, the DNA sample taken from a cutting of the hat contained "a dominant profile consistent with the reference sample of Justin Booker." The DNA expert was confident the DNA match was to Booker. Further, the gunshot residue test results showed Booker had a particle on the back of his left hand that was indicative of gunshot residue, and Booker was left-handed.

¶21. The jury could have found Booker's statement to police that he denied going to the store incredible due to the presence of his hat in the area of the crime scene. Booker also suggests that he went to the grocery store for his own purposes and ran out of the store and home upon realizing a robbery was taking place. However, the evidence shows otherwise.

9

Sheriff Jones testified that he saw two men run to Booker's residence from the store after the shooting, and the first one was wearing a hat. The jury could easily infer that Booker would run to his own home after the incident.

¶22.   Booker continues that even if the evidence shows he was present at the store, this fact fails to show he participated in the robbery. However, the State did not need to prove Booker actually committed the robbery himself, only that he acted in concert with or aided and abetted Collins and/or Shields. "[I]t is well established that 'any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an "aider and abettor" and is equally guilty with the principal offender.'" *Sneed v. State*, 31 So. 3d 33, 41 (¶24) (Miss. Ct. App. 2009) (quoting *Jones v. State*, 710 So. 2d 870, 874 (¶15) (Miss.1998)). "[I]f two or more persons enter into a combination or confederation to accomplish some unlawful object, any act done by any of the participants in pursuance of the original plan and with reference to the common object is, in contemplation of law, the act of all." *Id.* (quoting *Scarborough v. State*, 956 So. 2d 382, 386 (¶21) (Miss. Ct. App. 2007)).

¶23.   The State presented sufficient evidence to support the jury's finding Booker participated in the robbery of Goon's Grocery Store with Collins and Shields. During closing arguments, the State theorized that three individuals were needed to rob the store: a person to carry the cash register, a person to handle the gun, and a person to serve as look-out. There was sufficient evidence to show Booker participated in one of these three positions. Also during closing arguments, Booker's counsel, when discussing that just

because Booker went into the store did not mean he participated in the crime, admitted that during Booker's police interview, he lied to the police about not going in Goon's Grocery Store on the night in question and that the Mountain Dew hat found a few feet from the stolen cash register belonged to Collins, not him.[5] Defense counsel explained the "reasonable hypothesis consistent with innocence" was that Booker became scared, abandoned any intent to commit a crime, and ran out of the store.

¶24. The evidence admitted at trial corroborates defense counsel's concession that Booker lied during his police interview. Even though Booker contended in his first interview that the hat belonged to Collins, Collins's DNA was not found on the hat. Further, the DNA testing showed the hat belonged to Booker. Lampkin testified that after hearing gunshots at the store, he saw three individuals exit the store and run in the same direction toward the railroad tracks, which was where the hat and cash register were found. Sheriff Jones saw two of the individuals run to and enter Booker's residence.

¶25. The jury was properly instructed on aiding and abetting, as well as circumstantial evidence and the defense of abandonment.[6] A reasonable and fair-minded jury could have

---

[5] Booker's counsel seems to be relating what Booker said in his second statement to Officer Walker. In that statement, taken a few days after the first, Booker initially denied going to the store with Collins, whom Booker claimed planned the robbery and asked Booker to participate. Ultimately, however, Booker admitted not only that he went to the store, but that he and Shields were the "lookouts" outside of the store. Booker claimed Collins was the only individual with a gun and only Collins went inside of the store.

[6] "Abandonment is a defense if the attempt to commit a crime is freely and voluntarily abandoned before the act is put in process of final execution, if there is no outside cause prompting the abandonment." *Barnes v. State*, 763 So. 2d 216, 218-19 (¶6) (Miss. Ct. App. 2000) (citing *Bucklew v. State*, 206 So. 2d 200, 204 (Miss. 1968)).

determined Booker was either the principal or accomplice in the robbery and resulting murder of Davis. Accordingly, the State presented sufficient evidence for a reasonable jury to determine, beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, that Booker was guilty of capital murder.

## II. Weight of the Evidence

¶26. In the alternative, Booker argues the verdict is against the overwhelming weight of the evidence presented at trial. "A motion for a new trial [may challenge] the weight of the evidence." *Flynt v. State*, 183 So. 3d 1, 10 (¶30) (Miss. 2015). The appellate court's standard of review when analyzing the trial court's denial of a motion for a new trial is an abuse of discretion. *Johnson v. State*, 904 So. 2d 162, 167 (¶11) (Miss. 2005). The reviewing court must "weigh the evidence in the light most favorable to the verdict" and "only [disturb] a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017).

¶27. Booker reiterates the same arguments he made on his challenge to the sufficiency of the evidence. He emphasizes that no eyewitnesses identified him and that neither of his co-defendants testified to his involvement. Further, Booker claims the forensic evidence against him was "tenuous."

¶28. We disagree with Booker's contentions. It is the jury's province to determine the weight and credibility given to the evidence and resolve all conflicts in the evidence. *Taylor v. State*, 110 So. 3d 776, 784 (¶29) (Miss. 2013). The jury found the forensic evidence of

the gunshot residue on Booker's left hand, although minimal, indicative that Booker was at the scene, as did the finding of the hat that contained Booker's DNA near the stolen cash register. Booker submitted a jury instruction on the defense of abandonment as well, but the jury was not convinced. The jury's conclusion was reasonable, as multiple individuals were seen running from the store to Booker's house. The jury could have determined that Booker was the shooter due to the gunshot residue on his dominant hand and that he stole the cash register because his hat was found near it. Regardless, the overwhelming weight of the evidence shows Booker was involved in the crime. Additionally, Booker lied to law enforcement later that night about his presence at the store and his ownership of the hat. Viewing the evidence in the light most favorable to the verdict, the jury's finding Booker guilty of capital murder was not so contrary to the overwhelming weight of the evidence that it sanctions an unconscionable injustice.

¶29. Accordingly, we affirm Booker's capital murder conviction and sentence of life imprisonment with eligibility for parole.

¶30. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**

13